United States Court of Appeals
Fifth Circuit

**F I L E D**

June 7, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
————————————

04-10136
————————————

UNITED STATES OF AMERICA

            Plaintiff - Appellee

     v.

FRANKLIN DELANO INMAN

            Defendant - Appellant
            ————————————

      Appeal from the United States District Court
          for the Northern District of Texas
            ————————————

Before GARWOOD, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

     Appellant Franklin Delano Inman appeals his conviction and sentence for wire fraud under 18 U.S.C. § 1343 and access device fraud under 18 U.S.C. § 1029(a)(2). As discussed below, we affirm Inman's conviction and prison sentence but remand the restitution portion of Inman's sentence for modification.

## I. Background

     From April 1997 through March 2001, Inman worked as a computer system administrator in the information technology ("IT") department of Corning Systems ("Corning"), a wholesale business that manufactures equipment for telephones. During that time, Jean Maddox ("Maddox") worked in Corning's IT department as

-1-

a leasing administrator. Her duties included purchasing computer parts for employees in the company. Corning issued to Maddox a Wachovia VISA credit card, which Maddox, Inman, and other IT employees were authorized to use for company purchases, but not for personal purchases.

During his employment with Corning, Inman repeatedly used the VISA card to make purchases from a company named Cutting Edge Technologies ("Cutting Edge"). Cutting Edge was a shell company (an entity that sold no product or service) that Inman had started. The shell company was able to make phantom credit card sales through a merchant account set up in October, 1997, with Nova Information Systems, a credit card processing company. Proceeds from the phantom purchases were deposited by Nova into a Bank One account that Inman had opened for "Inman Consulting, Incorporated" in September 1997.

Maddox became suspicious of Inman in early 2001 because of the numerous purchases from Cutting Edge that appeared on the VISA statement and because she never saw any of the items Inman allegedly purchased. After Maddox reported the suspicious activity to the IT Department Manager, it was discovered that Cutting Edge did not really exist. When asked to explain the purchases, Inman told the IT Department Manager that he would explain the transactions after he returned to work from vacation. However, Inman never returned.

Subsequently, a jury convicted Inman on ten counts of wire

fraud in violation of 18 U.S.C. § 1343 and one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2). The district court sentenced Inman to 21 months of imprisonment, a 3-year term of supervised release, a $1,100 mandatory special assessment, and $135,283.11 in restitution.

## II. Discussion

Inman challenges his conviction, restitution order, and sentence enhancements. First, he argues that there was insufficient evidence to uphold his conviction for access device fraud under 18 U.S.C. §1029(a)(2). Second, he contends that the trial court's restitution order was improper because it exceeded the temporal scope of the indictment. Third, Inman argues that his prison sentence is unconstitutional because the district court enhanced his sentence based on facts not found by a jury. We discuss each argument in turn.

### A. Insufficiency of Evidence

Inman first argues that there is insufficient evidence to sustain his conviction under 18 U.S.C. § 1029(a)(2) because one of the statutory elements of that provision, the use of an unauthorized access device, was not proved at trial. Thus, he contends that the district court's denial of his timely motion for a new trial was erroneous.

We review the evidence to determine whether any reasonable trier of fact could have found that the evidence established

guilt beyond a reasonable doubt. *United States v. Martinez*, 975 F.2d 159, 160-61 (5th Cir. 1992).  We view the evidence in the light most favorable to the government, drawing all reasonable inferences from the evidence in favor of the jury's verdict.  *Id.* at 161; *United States v. Shabazz*, 993 F.2d 431, 441 (5th Cir. 1993).

Section 1029(a)(2) provides that a person who "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period" is subject to criminal penalties. 18 U.S.C. § 1029(a)(2).

According to Inman, the evidence at trial showed that the credit card was an authorized access device, rather than an unauthorized one, and that Corning was aware of the charges he made on the credit card.  Inman acknowledges that arguably he may have exceeded his authority to charge on the card, but he asserts that such action does not violate § 1029(a)(2).  We disagree.

Section 1029(e)(3) defines an "unauthorized access device" as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3). Because neither party claims that the VISA credit card used by Inman was stolen, expired, revoked, or canceled, the relevant inquiry here is whether the card was "obtained with

-4-

intent to defraud."

The evidence at trial showing that Inman intended to defraud Corning when he obtained the card from Maddox was substantial. The government presented evidence that before obtaining the VISA card, Inman had already created the fraudulent company, Cutting Edge, from which he would later falsely purchase products; acquired a merchant account for the company; and opened a recipient bank account for the transfer of the credit card transaction proceeds. Thus, a jury would have sufficient evidence to find that Inman obtained the card with intent to fraudulently collect money from the VISA card issuer at Corning's expense.

Moreover, while Inman had authorization to use the VISA card for company purchases, he was unauthorized to use the card for personal purchases.  Thus, Inman directly violated Corning's mandate against using the card for personal purchases when he fraudulently made phantom purchases from Cutting Edge. Such misuse of the card served as further evidence of an unauthorized access device. *See* H.R. Rep. 98-894, *14, 1984 U.S.C.C.A.N. 2689, **3700, 3703 (describing an unauthorized access device as a "genuine access device[] being used without authority" and "genuine but misused" in distinguishing between "counterfeit access device" as defined in § 1029(E)(2) and an "unauthorized access device" in § 1029 (E)(3)).

### B. Restitution Order

Inman next argues that the district court erred in ordering restitution in the amount of $ 135,283.11 because the order exceeds the amount of loss incurred during the temporal scope of the indictment. The indictment charged Inman with actions occurring from March, 2000, to February, 2001. The amount of loss resulting from actions during that time period totaled $64,501.97. However, the district court calculated Inman's restitution at $135,283.11 based on actions occurring between November 6, 1997, and February 22, 2001.

Because Inman did not raise his challenge to the restitution order below, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). Thus, Inman must show that (1) there is an error, (2) the error is plain, and (3)the error affects substantial rights. *Id.* at 732. When all three of these requirements are met, we will exercise our discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 734 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

Here, Inman has shown that there is an error that is plain. A defendant sentenced under the Mandatory Victim Restitution Act ("MVRA") is only responsible for paying restitution for the conduct underlying the offense for which he was convicted. *United States v. Mancillas*, 172 F.3d 341, 343 (5th Cir. 1999). "[W]here a fraudulent scheme is an element of the conviction, the court

may award restitution for 'actions pursuant to that scheme.'" *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002) (quoting *United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir. 1993)).  However, the restitution for the underlying scheme to defraud is limited to the *specific* temporal scope of the indictment. *See United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995) (affirming district court's restitution order based on fraudulent scheme where indictment gave dates during which the scheme occurred and described the actions of which the scheme to defraud consisted); *Stouffer*, 986 F.2d at 928-29 (affirming district court's inclusion of all losses caused by a scheme to defraud where "the scheme to defraud was specifically defined in the indictment--i.e., the indictment described in detail the duration of [the scheme] and the methods used").  Here, Inman's restitution order under the MVRA was based, in part, on transactions that were not alleged in the indictment and occurred over two years before the specified temporal scope of the indictment.  Thus, the district court plainly erred.

The third prong of the plain error test is also met. The restitution order affected Inman's substantial rights because the outcome of the district court proceedings would have been different if the error had not occurred. *See Olano*, 507 U.S. at 734. Had the district court based the restitution order on the temporal scope provided in the indictment, the restitution order

-7-

could not have exceeded $64,501.97.  This variance of over

$70,000 merits correction.

### C.  *Constitutionality of Sentence Enhancements*

Finally, Inman argues that his sentence is unconstitutional

under *United States v. Booker*, --- U.S. ----, 125 S.Ct. 738

(2005), because his sentence was based on facts neither admitted

by Inman nor found by a jury.

Under the United States Sentencing Guidelines, Inman's base-

offense level was calculated at 6.  This base-offense level,

given Inman's criminal history category, would have yielded a

term of imprisonment of 0 to 6 months.  However, the district

court applied a 2-level enhancement to Inman's offense level

pursuant to U.S.S.G. § 2F1.1(b)(2) for engaging in more than

minimal planning and a 7-level enhancement under U.S.S.G. §

2F1.1(b)(1)(H) for a total loss to victims above $120,000. Under

the guidelines, the resulting total offense level of 15 resulted

in an imprisonment range of 18 to 24 months.  The district court

sentenced Inman to 21 months of imprisonment.  During the

pendency of this appeal, the U.S. Supreme Court issued its

opinion in *Booker*, 125 S.Ct. 738, rendering the Guidelines,

including the provisions for enhancing a defendant's sentence

based on facts not found by the jury, advisory rather than

mandatory.  Inman argues that under the holding of *Booker*, his

prison sentence is unconstitutional.  Because Inman raises his

-8-

challenge to his prison sentence for the first time on appeal, we review for plain error. *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005); *Olano*, 507 U.S. at 731-32.

The first prong of the plain error test is met here. Inman's enhancements were based on the amount of planning in which Inman engaged and a total loss of over $120,000, neither of which were charged in the indictment or found by a jury. Thus, Inman's sentence was enhanced based on facts found by the judge under a mandatory Guidelines regime in violation of the Sixth Amendment. *See Mares*, 402 F.3d 520-21.

The error is also plain in that it is clear at the time of our review. *See id.* at 521; *Johnson v. United States*, 520 U.S. 461, 468 (1997) (holding that error is plain for purposes of plain error review as long as the law regarding the issue is settled at the time of appellate consideration).

However, the third prong of the plain error inquiry, which requires the appellant to show that the error affected substantial rights, is not met here. Inman has pointed to no evidence that the sentencing judge would have imposed a different sentence under an advisory scheme rather than a mandatory one. *See Mares*, 402 F.3d at 521.  Neither has our review of the record revealed any such evidence.  *See United States v.* Villanueva, —F.3d ----, 2005 WL 958221, *7 (5th Cir. Apr. 27 2005) (finding no effect on substantial rights where "there is no indication in

the record . . . that gives us any clue" as to what the sentencing judge would have done absent a mandatory sentencing scheme); *Mares*, 402 F.3d at 521 (same). To the contrary, the sentencing judge expressed his belief that the sentence was appropriate for Inman's offense in stating, "A sentence at the middle of the guideline range meets the Court's sentencing objectives of punishment and deterrence." We thus find no plain error in Inman's sentence of imprisonment.

### III. Conclusion

For the above stated reasons, we AFFIRM Inman's conviction and sentence, with the exception of the restitution order, which we REMAND to the district court for modification consistent with this opinion.