# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2012

Nos. 11-20102, 11-20167, 11-20204

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

ARUN SHARMA, KIRAN SHARMA

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Texas

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Defendants–Appellants Dr. Arun Sharma ("Arun") and Dr. Kiran Sharma ("Kiran") pleaded guilty to defrauding health-care insurers by billing for pain injections that they never administered. As part of their sentences, the district court ordered them to pay $43,318,170.93 in restitution to thirty-two victims defrauded by the scheme, *viz.*, Medicare, Medicaid, and thirty private insurers. The Sharmas appeal the amount of restitution, contending that it exceeds the insurers' actual losses. Arun also claims that the government breached his plea agreement.

11-20102, 11-20167, 11-20204

## I. Facts & Proceedings

Arun and Kiran are physicians married to each other who operated two pain management, arthritis, and allergy clinics in Houston, Texas. From 1998 to 2009, they conspired to defraud Medicare, Medicaid, and many private insurance companies of millions of dollars by billing for paravertebral facet-point injections that they never administered to patients. Sometimes, the Sharmas would actually administer a cheaper, faster, "trigger-point injection" but would "upcode" the procedure and bill insurers for the more expensive facet-point injection. Other times, the Sharmas would submit "phantom" bills for injections or patient visits that never happened.

The Sharmas were indicted on sixty-four counts of conspiracy, health-care fraud, mail fraud, unlawful distribution of controlled substances, and money laundering. Eventually, each pleaded guilty to (1) one count of conspiracy to commit health-care and mail fraud and (2) one substantive count of health-care fraud, in violation of 18 U.S.C. § 1347. The counts of conviction related to the injection-billing fraud but not to any other charged conduct, such as unlawful distribution of controlled substances. In their plea agreements, the Sharmas agreed to pay restitution to the insurer victims in an amount to be set by the district court. They also agreed to specified forfeitures, including a money judgment to be rendered by the sentencing court in the same amount as the restitution award. Finally, the government agreed to place $1,500,000 of the seized funds in an educational trust for the benefit of the Sharmas' son.[1]

The United States Probation Office ("Probation Office") prepared Presentence Investigation Reports ("PSRs") for both defendants. The PSRs

---

[1] The plea agreements also contained appeal waivers. At oral argument, the government conceded that the waivers do not bar this appeal of restitution orders that purportedly exceed the statutory maximum authorized by the Mandatory Victim Restitution Act. *See United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012).

calculated that the actual loss to Medicare, Medicaid, and thirty private insurers totaled $43,318,170.93, and recommended restitution in that amount. The Sharmas objected, primarily because the recommendation did not give them a credit for amounts that the insurers would have paid for the trigger-point injections that were actually administered. They also objected that the $43,318,170.93 total overstated the insurers' actual losses because it improperly included payments for non-injection treatments unrelated to the Sharmas' specific offenses of conviction, such as Kiran's undisputedly legitimate allergy practice and treatments other than by injection.

In support of their objections, the Sharmas submitted an alternative restitution calculation prepared by a forensic accountant. According to her report, their accountant first scrutinized the insurers' claimed losses to exclude payments for procedures other than injections, reducing the total loss to $37,670,826.32. The accountant then assumed that the Sharmas had administered a specific number of legitimate, medically necessary trigger-point injections each month and that the insurers would have paid for those procedures without the "upcoding." Applying a credit for those injections, the accountant concluded that the actual loss to the insurers totaled $21,028,963.61.

At sentencing, the district court heard arguments regarding the amount of restitution and the Sharmas' entitlement to credit for the medical services actually provided. The district court overruled the Sharmas' objections and ordered restitution in the amount of $43,318,170.93, the exact amount recommended in the PSRs.

The Sharmas timely appealed, challenging the amount of restitution ordered by the district court. In addition, Arun contends that the government breached the plea agreement by pursuing forfeiture of particular assets and by opposing a credit to the restitution award for legitimate charges.

## II. Analysis

A.    Standards of Review

We review the quantum of an award of restitution for abuse of discretion.[2] We review the district court's factual findings for clear error.[3] A factual finding is clearly erroneous only if "based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed."[4] We may affirm in the absence of express findings "if the record provides an adequate basis to support the restitution order."[5]

As Arun did not articulate breach of the plea agreement to the district court, we review that claim for plain error.[6] To show plain error, he must demonstrate that the error was clear or obvious and affected his substantial rights.[7] "Even if he meets this tough standard, we will not reverse unless the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings."[8]

B.    Restitution

The district court awarded restitution pursuant to the Mandatory Victim Restitution Act ("MVRA").[9] The MVRA authorizes restitution to a victim

---

[2] *See United States v. Mann*, 493 F.3d 484, 498 (5th Cir. 2007).

[3] *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006).

[4] *E.g.*, *United States v. Teel*, 691 F.3d 578, 585 (5th Cir. 2012) (internal quotation marks omitted).

[5] *United States v. Blocker*, 104 F.3d 720, 737 (5th Cir. 1997).

[6] *See United States v. Hebron*, 684 F.3d 554, 557-58 (5th Cir. 2012) ("[W]ithout a specific objection alerting the district court that the government has breached the plea agreement, the error is not preserved.").

[7] *E.g.*, *United States v. Barlow*, 568 F.3d 215, 219 (5th Cir. 2009).

[8] *Id.* (internal quotation marks omitted).

[9] 18 U.S.C. § 3663A.

4

11-20102, 11-20167, 11-20204

"directly and proximately harmed" by a defendant's offense of conviction.[10]  The purpose of restitution under the MVRA is to compensate victims for losses, not to punish defendants for ill-gotten gains.[11]  An award of restitution greater than a victim's actual loss exceeds the MVRA's statutory maximum.[12]

The Sharmas contend on appeal, as they did in the district court, that the total restitution awarded exceeded the aggregate amount of the insurers' actual loss by erroneously (1) including restitution for payments not related to the injection-billing fraud and (2) failing to give credit for amounts that the insurers would have paid for the less expensive injections that were actually administered.  We address each of the contentions in turn.

1.    Actual Loss Caused by the Offenses of Conviction

The MVRA limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction.  An award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea,[13] or for losses caused by conduct that falls outside the temporal scope of the acts of conviction.[14]  Moreover, excessive restitution

---

[10] 18 U.S.C. § 3663A(a)(1), (a)(2), (c)(1); *see also United States v. Arledge*, 553 F.3d 881, 898 (5th Cir. 2008).

[11] *See Beydoun*, 469 F.3d at 108; *see also United States v. Taylor*, 582 F.3d 558, 565-66 (5th Cir. 2009).

[12] *See Chem. & Metal Indus.,* 677 F.3d at 752; *Beydoun*, 469 F.3d at 107.

[13] *See United States v. Hinojosa*, 484 F.3d 337, 343 (5th Cir. 2007) (vacating order of restitution that included losses caused by uncharged fraud that was "outside the scope of the indictment and inconsistent with the understanding of the parties to the oral plea").

[14] *See United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (vacating excessive restitution award that included losses falling outside the "*specific* temporal scope of the indictment") (emphasis in original).

11-20102, 11-20167, 11-20204

awards cannot be excused by harmless error; every dollar must be supported by record evidence.[15]

The Sharmas insist that the district court erred by awarding restitution for losses not caused by their offenses of conviction. They pleaded guilty to only two of the sixty-four counts of indictment, and both of those counts related to the scheme to bill insurers between 1998 and 2009 for facet-point injections that were never administered. Amounts that the insurers paid the Sharmas between 1998 and 2009 for those non-administered injections are actual losses properly compensable through restitution. Not so, however, for amounts paid by the insurers before 1998 or paid by them between 1998 and 2009 for unrelated treatments. Those payments do not constitute losses directly and proximately caused by the offenses of conviction and should not have been included in calculating the restitution award.

The district court adopted the precise amount from the PSRs, which it could do only if those amounts had an adequate evidentiary basis and remained unrebutted by the defendants.[16] In preparing the Sharmas' PSRs, the Probation Office apparently relied on statements from the insurers themselves. The government solicited information regarding "any financial losses and/or harm experienced as a result of" the Sharmas' billing for injections that were not administered. Medicare, Medicaid, and thirty of the private insurers responded with "victim impact statements" claiming losses from the fraud. For Medicare, Medicaid, and twenty-eight of the thirty defrauded private insurers, the Probation Office copied the claimed losses directly into the PSRs.[17]

---

[15] *See Arledge*, 553 F.3d at 899 (vacating restitution award because less than 1% of the total was not supported by evidence of causation by fraud).

[16] *See United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012).

[17] For the remaining two insurers, the PSRs recommended different amounts than the losses claimed in the victim impact statement, but the record is silent as to this discrepancy.

11-20102, 11-20167, 11-20204

By thus directly incorporating the amounts from the victim impact statements into the PSRs as actual losses, the Probation Office went astray. Examples from three of the insurers will suffice to show how the Probation Office failed to scrutinize those amounts and thereby recommended restitution for more than the insurers' actual losses. One insurer, Tricare, claimed as loss all of its payments to the Sharmas dating back to 1997. Inasmuch as the charged conspiracy did not begin until 1998, however, the 1997 payments plainly do not constitute actual losses under the MVRA.[18] A second insurer, Texas Amerigroup, reported that it paid the Sharmas $650,775.01 for injections, out of a total of $929,884.55 paid to them for all treatments. Yet the Probation Office listed the larger figure, the one for *total* payments, as actual loss instead of listing only the lesser amount that the insurer paid for injections. This too overstates the insurer's loss by including payments not caused by the specific convictions.[19] A third insurer, Principal Life Insurance, attached a spreadsheet of all of its payments to the Sharmas, but expressly stated that it was "not sure which claims relate to the guilty plea." The Probation Office nevertheless reported all of those payments as actual loss. We find no independent basis in the record on which the PSRs could have concluded that the entire amount related to the guilty pleas when the insurer itself stated that it did not know.[20]

These three errors in confecting the PSRs resulted in recommendations of restitution to Tricare, Texas Amerigroup, and Principal Life that exceeded the evidence of their actual losses under the MVRA. Moreover, these obvious mistakes undermine our confidence that the Probation Office gave any meaningful scrutiny to the actual losses of Medicare, Medicaid, and the

---

[18] *See Inman*, 411 F.3d at 595.

[19] *See Hinojosa*, 484 F.3d at 343.

[20] *See Arledge*, 553 F.3d at 898-99.

remaining twenty-seven private insurer victims.[21]  Our doubts are compounded by the Sharmas' rebuttal evidence.  Their accountant examined the insurers' claimed losses and concluded that, by failing to exclude non-injection payments, the PSRs overstated the loss by $5,647,344.61.

In sum, the record does not support the entire $43,318,170.93 of restitution recommended in the PSRs and awarded by the district court.  The Sharmas identified this deficiency to the district court, but it did not address those objections and instead adopted the unsupported figure.  This was an abuse of discretion.[22]

2.     Credit for Medical Services Actually Provided

Actual loss also must not include compensation for that which would have occurred in the absence of the crime.  Thus, in health-care fraud cases, an insurer's actual loss for restitution purposes must not include any amount that the insurer would have paid had the defendant not committed the fraud.  For example, in *United States v. Klein*, the defendant physician was convicted of billing insurers for personally administering three shots to his patients, when in fact each patient self-administered two of the three shots at home.[23]  The district court awarded restitution in the entire amount that the insurers paid the

---

[21] To be clear, we are not criticizing the use of victim impact statements.  The government may properly solicit them, and the district court may rely on them as an evidentiary basis for an award of restitution that complies with the standards of the MVRA.  But if a dispute arises, the court must determine by a preponderance of the evidence whether the statements actually support the quantum of an award of restitution.  The error here was the unquestioning reliance on the statements, first by Probation and second by the sentencing court.

[22] "'[A]buse of discretion' is a phrase which 'sounds worse than it really is.'" *Smith Int'l, Inc. v. Tex. Commerce Bank*, 844 F.2d 1193, 1199 n.3 (5th Cir. 1988) (citation omitted).  "It is simply a legal term of art which, properly understood, carries no pejorative connotations of a professional or personal nature."  *Id.*; *see also Sam's Style Shop v. Cosmos Broad. Corp.*, 694 F.2d 998, 1007 n.21 (5th Cir. 1982) ("The term 'abuse of discretion' is unfortunate, for it has no pejorative content.").

[23] 543 F.3d 206, 208-09 (5th Cir. 2008).

defendant for the two self-administered shots, including the cost of the medication itself as well as the amount the defendant charged for administering it.[24]   But this overstated the insurers' losses: Even though the doctor fraudulently misrepresented how the medication was administered, "the insurance companies would have had to pay for the medications regardless of the fraud."[25]   We therefore vacated the restitution award and remanded for recalculation with a credit for the value of the medication.[26]

In contrast, no credit was warranted in *United States v. Jones* when the defendants billed Medicare for providing physical rehabilitation services, but fraudulently misrepresented the qualifications of the personnel who performed the work.[27]   The district court awarded restitution to Medicare for the total amount it paid to the defendants, without giving any credit for the value of the physical therapy that was actually provided.[28]   We affirmed because, although the patients may have received some therapeutic benefit, Medicare itself–not the patients–was the victim of the fraud and would not have paid for any of the treatment absent those fraudulent misrepresentations.[29]

In the instant case, the parties dispute whether this situation is closer to *Klein* or to *Jones*.  The Sharmas assert that, like the defendant in *Klein*, they provided real medical services for which the insurers would have paid in the

---

[24] *Id.* at 215.

[25] *Id.*

[26] *Id.* at 213, 215-16.

[27] 664 F.3d 966, 970, 977 (5th Cir. 2011).

[28] *See id.* at 972-73, 984.

[29] *Id.* at 984.  *Jones* discussed the applicability of a credit in the context of actual loss calculation for sentencing purposes under the Guidelines, but the reasoning applies equally to restitution, which the court awarded in the same amount.  *See id.* at 972-73, 984.

absence of the fraudulent upcoding.[30]  The government contends that this case is closer to *Jones* because, notwithstanding any pain relief that the *patients* might have received, nothing in the record suggests that the *insurers* would have paid for the medically unnecessary trigger-point injections.

Even though the MVRA puts the burden on the government to demonstrate the amount of a victim's loss, a sentencing court may shift "the burden of demonstrating such other matters as the court deems appropriate ... [to] the party designated by the court as justice requires."[31]  In the past, we have approved the transfer of at least a portion of the burden to a defendant to establish his entitlement to a restitution credit.  In *United States v. Loe*, for example, we affirmed a district court's rejection of a restitution credit on the basis of the defendant's inability "to provide reliable evidence supporting its claims" that not all of its insurance claims were fraudulent.[32]  Similarly, in *United States v. Sheinbaum*, we stated that the defendant had "the burden of proving an offset" to restitution for any amounts it paid the victim in a civil settlement.[33]  And, in the unpublished opinion of *United States v. Edet*, another health-care fraud case, we affirmed a restitution award that did not credit the value of wheelchairs actually provided to patients because the defendant did not offer any evidence that Medicare would have paid for the wheelchairs in the absence of the fraud.[34]  With that precedent in mind, we examine the instant record.

---

[30] The Sharmas acknowledge that they are not entitled to credit for "phantom" bills based on nonexistent visits.

[31] 18 U.S.C. § 3664(e).

[32] 248 F.3d 449, 470 (5th Cir. 2001).

[33] 136 F.3d 443, 449 (5th Cir. 1998).

[34] No. 08-10287, 2009 WL 552123, at *3 (5th Cir. Mar. 5, 2009).

11-20102, 11-20167, 11-20204

The government presented unrebutted evidence that Arun (1) deliberately misdiagnosed patients as having rheumatoid arthritis and put them on an injection regimen, (2) tried to convince all of his patients to have trigger-point injections at every visit, (3) required patients who declined injections to sign mendacious acknowledgments that they had received the treatments before he would prescribe pain medication, and (4) administered injections in an assembly-line fashion without taking routine sanitary precautions.[35]  The Sharmas also employed six foreign medical graduates to fabricate bills en masse.  Finally, the government asserted in its sentencing memorandum that patients who later went to different physicians were "universally" taken off trigger-point injections.

The Sharmas offered little in the way of concrete evidence to rebut the government's contentions.  Their plea agreements stated that some injections were provided, but did not represent that those injections were medically necessary or that the physicians would have been reimbursed for them by the insurers.  Although the Sharmas provided anecdotal statements from patients claiming some degree of pain relief, the victims of the crimes of conviction were the insurance companies, not the patients.[36]  The Sharmas did not produce competent evidence suggesting that even one injection to even one patient was medically necessary and met the insurer's reimbursement standards.  Instead, they submitted only the accountant's report which *assumed* without explanation that legitimate and medically necessary injections were performed and would have been reimbursed.  The district court was not required to accept that self-serving premise.

---

[35] Our decision is limited to these facts.  Under other circumstances, the government's burden of proving loss might require expert testimony regarding medical necessity or billing standards.

[36] *See Jones*, 664 F.3d at 984.

11

Our review of the record in the context of the burdens of proof satisfies us that the government provided sufficient evidence that the trigger-point injections were merely a revenue stream for the Sharmas and not legitimate, medically necessary treatments for which the insurers would have paid in the absence of the fraud. The Sharmas did not submit evidence refuting that conclusion. Accordingly, the district court did not abuse its discretion in declining to apply a restitution credit.

C.     Breach of the Plea Agreement

Arun also contends that the government breached his plea agreement by (1) opposing the restitution credit discussed above, (2) requesting forfeiture of the remainder of the educational trust, and (3) requesting forfeiture of funds not listed in the indictment or in notices of forfeiture. "In evaluating whether a plea agreement was breached, we apply general principles of contract law, construing the terms strictly against the government as drafter, to determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."[37]

Assuming without deciding that Arun adequately briefed this issue, none of the purported breaches are inconsistent with a reasonable understanding of the plea agreement. First, the agreement did not stipulate to a method for calculating restitution or to a credit for any trigger-point injections.[38] In fact, the government expressly reserved the right to "set forth or dispute sentencing factors or facts material to sentencing." Second, the plea agreement did not address the balance of the $1.5 million educational trust. As the trust contained seized funds, and Arun agreed to forfeit proceeds of the fraud, he could not reasonably expect any remainder of the trust to revert to him. Third, although

---

[37] *Hebron*, 684 F.3d at 558 (internal quotation marks and citation omitted).

[38] *See id.* at 557-58 (finding that Government breached a plea agreement containing an express agreement as to the range of loss).

the plea agreement stated that particular properties listed in the indictment and in forfeiture notices were subject to forfeiture, it did not limit forfeiture to those listed items or accounts. Rather, Arun agreed categorically "to forfeit whatever interest [he] has in assets related to this case." The government did not breach the plea agreement.

### III. Conclusion

The evidence is not sufficient to support the district court's entire $43,318,170.93 restitution award. The Sharmas both identified these deficiencies and provided rebuttal evidence confirming that the PSRs' recommended restitution amount exceeded the insurers' actual losses by millions of dollars. Thus, the district court abused its discretion as a matter of law in awarding the entire amount recommended in the PSRs. The district court did not, however, abuse its discretion in declining to allow the Sharmas credit for injections that were not shown to be medically necessary or reimbursable by the insurers.

Accordingly, we vacate the order of restitution and remand for recalculation consistent with this opinion and based solely on evidence already in the record.[39] On remand, the district court must specify, on the record, its findings and reasons regarding each insurer's actual loss. And, as the Sharmas' plea agreements stipulated to a forfeiture money judgment in the same amount as the restitution award, we also vacate the amount of the forfeiture award and remand for recalculation.[40] Finally, the government did not breach the plea agreements with the Sharmas.

---

[39] *See Arledge*, 553 F.3d at 899 (vacating order of restitution and remanding "for a recalculation of actual loss based upon the evidence in the record"); *Beydoun*, 469 F.3d at 108 (remanding "to the district court to re-analyze the government's evidence" and to recalculate restitution).

[40] Our holding has no effect on any other forfeiture sought by the government.

11-20102, 11-20167, 11-20204

In summary, we vacate the district court's order of restitution and order of forfeiture, and we remand this matter to that court for it to recalculate those amounts in a manner consistent with this opinion.

VACATED and REMANDED with instructions.