# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20589

United States Court of Appeals
Fifth Circuit

**FILED**
August 23, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JIM DIAL,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CR-56-3

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

      Defendant-Appellant Jim Dial pleaded guilty to conspiracy to commit wire fraud by disseminating false information to inflate the price of his company's stock for personal profit. Dial, along with his co-conspirators, are jointly and severally liable to pay $7,388,093.43 in restitution to 317 investors identified as victims of his crime of conviction. Dial previously appealed the district court's order of restitution, arguing that he had an inadequate

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20589

opportunity to object to the restitution amount on the basis that it exceeded the statutory maximum under the Mandatory Victims Restitution Act ("MVRA"). We vacated the district court's order and remanded for further proceedings. Those proceedings culminated in a second order of restitution, from which Dial now appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

Dial is the former CEO of Grifco International, Inc. In March 2010, Dial, along with co-defendants Alex Ellerman and Evan Jarvis, was charged in an eight-count indictment with conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343. Specifically, from July 2004 to December 18, 2007, Dial and his co-defendants, all holders of Grifco stock, were alleged to have disseminated false information about Grifco stock to artificially inflate its value before selling it at a profit. Dial pleaded guilty to one count of wire fraud and, among other things, agreed to pay restitution to the victims of his crime. The court sentenced Dial to 60 months' imprisonment and three years of supervised release.

At the sentencing hearing, the district court observed that Dial had caused millions in losses, that he had defrauded over 200 individuals, and that the court had considered 284 victim impact statements submitted by individuals who had purchased Grifco stock during the conspiracy and suffered resulting losses.[1] The Government requested and was granted more time to finalize the exact amount of restitution, but stated that it anticipated the restitution amount to be at least seven million dollars.

In September 2012, the Government filed a proposal for restitution, requesting $7,388,093.43 in restitution to a total of 317 victims. Nearly a year

---

[1] 33 additional victim impact statements were provided to the court after sentencing, but before the court issued its restitution order.

later, the Government filed a motion for restitution order. On September 3, 2013, the district court entered a restitution order and amended the judgments against Dial, Ellerman, and Jarvis to reflect that they were jointly and severally liable to 317 victims for a loss totaling $7,388,093.43.

Defendants immediately filed a motion for reconsideration. They informed the court that the Government and Dial's counsel had been conferring for months over the amount of restitution. Defendants attached their email correspondence as exhibits to the motion. Dial had raised issues with the records supporting some of the victims' losses. At his request, the Government obtained further documentation for several individual claims. In the last email exchanged, Dial's counsel wrote, "incorporating the additional documentation . . . [t]he total documented loss is now around $5,616.00. Is this a number we can agree upon and just submit an agreed upon order?" Apparently no agreement had been reached before the Government filed its motion for an order of restitution. Defendants thus claimed that they had not been afforded an adequate opportunity to be heard and to present evidence supporting an alternative amount of restitution. In response, the Government acknowledged that there had been a breakdown in communications between the parties. It nonetheless maintained that reconsideration should be denied, arguing that it was Dial's responsibility to file an objection once he perceived negotiations had stalled, that the Government had long since met its burden of establishing the amount of restitution, and that Dial had not presented actual evidence refuting specific loss amounts. The court denied Defendants' motion.

Dial filed his first appeal to this Court. He contended that the district court ordered restitution without providing Dial an adequate opportunity to rebut the Government's evidence. Moreover, he argued that the restitution amount exceeded the statutory maximum under the MVRA because it was

supported by inadequate evidence and encompassed loss amounts that are not within the losses permitted by the restitution statute. We concluded that the record was inadequate to address his contentions because it contained none of the materials presented to the district court. *United States v. Dial,* 590 F. App'x 411 (5th Cir. 2015) (per curiam). Therefore, in the interests of justice, we vacated the order of restitution and remanded the case for a hearing on the order. *Id.* We advised that, at the hearing, the evidence upon which the district court relied should be made part of the record and the parties should have an opportunity to present their arguments regarding the restitution order to the district court. *Id.*

The district court duly conducted a hearing. The court sought the parties' positions on the proper way to proceed in compliance with our remand order. Ultimately, the court resolved that the record should be supplemented with the 317 victim impact statements that the Government offered as evidence in support of the amount of restitution. Dial, however, objected that the restitution amount was inadequately supported because several of the victims' statements were unaccompanied by audited records. With the parties' agreement, the court set a schedule for the probation office to re-review the evidence and issue an addendum to Dial's presentence investigation report ("PSR"), confirming the amount of restitution.[2] It allotted time for both parties to have an opportunity to object to the addendum.

The probation officer filed a brief addendum, maintaining that 317 victims suffered losses totaling $7,388,093.43, and that the losses occurred during the conspiracy's time frame. The addendum stated that the evidence supporting restitution had been entered into the record and that if a party

---

[2] The probation officer agreed to this procedure despite stating that the probation office had "painstakingly" reviewed and discussed the documents in light of the concerns Dial's counsel had raised in the months leading up to the court's first restitution order.

disputed a specific victim's losses, probation would again review the documentation supplied by that victim. Dial did not file any written objections.

At a subsequent hearing in August 2015, Dial's counsel stated that she was raising the same objections to the restitution amount that she raised in the prior appeal and at the initial hearing but explained that she "didn't think it made sense to file an objection [to the PSR addendum], because . . . the addendum not having changed anything, the objection remains the same." The Government, however, pointed out that the purpose of objections was to give the probation officer an opportunity to respond, which she could not do without specific objections to particular claims. The district court confirmed and incorporated the defense's objections into its ruling and adopted the PSR addendum without change. Dial's counsel stated her intention to file proposed findings of fact and conclusions of law, which the court agreed to consider. The court waited nearly a month for Dial's proposed findings and conclusions. None were filed.[3]

On September 20, 2015, the district court issued an order of restitution awarding $7,388,039.43 to 317 victims based on the Government's evidence. Dial timely appealed from the order.

## II.    STANDARD OF REVIEW

Because Dial failed to raise in the district court the specific objections to the restitution award which he urges in his appeal, he concedes in his reply brief that our review is limited to plain error. To prevail under plain error review, Dial must show: (1) an error or defect; (2) that is clear or obvious; and

---

[3] It appears that Dial submitted a document titled, "Defendant Jim Dial's Proposed Findings of Fact and Conclusions of Law", 16 days after entry of the final restitution order. Because the document was not part of the district court's evaluation, we decline to consider it for the first time on appeal. *See Assn. for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 243 n.4 (5th Cir. 1994). A review of the document reveals nothing that would change our conclusions herein.

No. 15-20589

(3) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If these three prongs are satisfied, we have discretion to remedy the error; however, this discretion "ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

## III.  DISCUSSION

Dial argues that the district court erred in basing a portion of the restitution award on unaudited victim impact statements. He identifies 39 such statements that do not have supporting documentation. Further, Dial asserts that the district court erred in calculating the amount of restitution owed to eight victims, based on the information they provided in their victim impact statements.

Before we reach the merits of Dial's claim, we must first address the Government's argument that Dial waived his right to appeal the restitution amount. After a review of the record, we conclude that Dial did not waive his right to challenge the restitution order. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733. In order for a waiver to occur, the defendant must make "an affirmative choice . . . to forego any remedy available to him." *United States v. Andino-Ortega*, 608 F.3d 305, 308 (5th Cir. 2010). The mere lack of an objection or an uninformed statement of "no objection" does not constitute waiver. *See id.* at 308–09; *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006). Waived errors are "entirely unreviewable." *United States v. Ceballos*, 789 F.3d 607, 613 (5th Cir. 2015).

The Government argues that Dial waived his claim because his counsel abandoned her prior objections when she failed to submit written objections to the PSR addendum. While Dial's counsel did not submit any written objections to the PSR addendum, she explained at the second hearing that she did not

6

No. 15-20589

think it made sense to do so, because "the addendum not having changed anything, the objection remains the same."  She then re-urged her prior objections to the restitution amount that she raised in Dial's first appeal and at the first hearing.  The district court confirmed and incorporated the objections into its ruling and adopted the PSR addendum without change.  Dial's counsel did not raise the specific objections that are the basis of his appellate arguments.  However, this colloquy does not indicate that Dial intentionally and knowingly abandoned his right to challenge the legality of the subsequent restitution order.  Accordingly, our review is for plain error.

The MVRA requires a district court to award restitution to victims "directly and proximately harmed as a result of the commission of [the defendant's] offense."  18 U.S.C. § 3663A(a)(1)–(2).  "The purpose of restitution under the MVRA is to compensate victims for losses, not to punish defendants for ill-gotten gains."  *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).  "An award of restitution greater than a victim's actual loss exceeds the MVRA's statutory maximum."  *Id.*  A defendant is thus "only responsible for paying restitution for the conduct underlying the offense for which he was convicted."  *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).  Similarly, restitution "is limited to the *specific* temporal scope of the indictment."  *Id.*  The MVRA does not allow restitution for consequential damages, including lost income or "recovery" losses.  *United States v. Onyiego*, 286 F.3d 249, 256 (5th Cir. 2002).

The Government has the initial burden of proving a victim's actual losses.  18 U.S.C. § 3664(e).  As long as the loss amount has an adequate evidentiary basis, the burden is on the defendant to present rebuttal evidence demonstrating that the information is "inaccurate or materially untrue."  *United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010).  "Mere objections to such supported facts are generally insufficient."  *United States v. Harris*, 702

7

F.3d 226, 230 (5th Cir. 2012).  The district court must resolve any disputes as to the amount or type of restitution by a preponderance of the evidence. § 3664(e).

Dial argues that the district court's reliance on 39 unaudited victim impact statements was error under *United States v. Sharma*.  Dial reads *Sharma* too broadly.  In *Sharma*, the defendants had presented rebuttal evidence proving that the amount of restitution exceeded the victims' actual losses.  703 F.3d at 321–24.  The defendants had conclusively demonstrated that a number of the victim impact statements listed losses that did not result from the defendants' crimes of conviction.  *Id.* at 323–24.  These victim impact statements were directly incorporated into the defendants' PSRs as actual losses.  *Id.* at 323.  The district court adopted the precise amount from the PSRs, which we stated "it could do only if those amounts had an adequate evidentiary basis and remained unrebutted by the defendants."  *Id.*  Because the defendants had rebutted the loss amounts, we held that the district court had erred in overruling the defendants' objections and relying on the unsupported loss figure in the PSRs.  *Id.* at 324.  Importantly, we stated in *Sharma*:

> To be clear, we are not criticizing the use of victim impact statements.  The government may properly solicit them, and the district court may rely on them as an evidentiary basis for an award of restitution that complies with the standards of the MVRA.  But if a dispute arises, the court must determine by a preponderance of the evidence whether the statements actually support the quantum of an award of restitution.  The error here was the unquestioning reliance on the statements, first by Probation and second by the sentencing court.

*Id.* at 324 n.21.

Under *Sharma*, the district court was entitled to rely on the loss amounts in the addendum to Dial's PSR unless Dial presented evidence rebutting those amounts or otherwise demonstrated that they lacked an adequate evidentiary

basis. *Id.*; *see also Scher*, 601 F.3d at 413.  He did not do so.  Merely objecting to the unaudited victim impact statements does not carry his burden.  *See Harris*, 702 F.3d at 230.  Moreover, each victim impact statement was submitted on a standardized form, which described the temporal scope and nature of the conspiracy and instructed the victims to list financial losses from the crime for which they had not been, or did not expect to be, repaid.  The form asked victims to provide receipts or other records demonstrating their losses, if possible.  Victims signed the forms under penalty of perjury.  There is no indication that these sworn statements are inherently unreliable.  Therefore, the district court did not err in relying on the loss amounts stated in the victim impact statements and incorporated into the PSR addendum.  *See Scher*, 601 F.3d at 414.

In addition, Dial contends that the district court erred in calculating the restitution awards for eight victims, based on the information they provided in their victim impact statements.  With respect to three victims, Dial asserts that their restitution awards were not properly offset, respectively, by the value of stock at the time the victim completed the statement, the value of stock sold, or the gain from a stock distribution.  Dial argues that two victims included consequential damages that are not compensable under the MVRA.  *See Onyiego*, 286 F.3d at 256.  He asserts that one victim stated only a paper loss, which was not his actual loss.  *See United States v. Olis*, 429 F.3d 540, 547 (5th Cir. 2005).  Another victim included stock purchased in 2008, after the conspiracy ended.  And one victim stated he had a "possible" loss in his retirement account, which was included in his restitution award despite its purported lack of certainty.

Even assuming the district court plainly erred in calculating these eight restitution awards and that the error affected Dial's substantial rights, he still has not demonstrated his entitlement to the relief he seeks.  Dial has not shown

how the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736. At all relevant stages of the proceedings below, Dial was in possession of the information that serves as the basis for his claims of error. Dial had ample opportunities to point out these alleged errors to the district court. He failed to do so during the nearly year-long period between the Government's proposal for restitution and the district court's first restitution order. He failed to do so in his motion for reconsideration of that order. And he again failed to so during the proceedings following remand from our Court after Dial's first appeal. Following our remand, the district court held two hearings. Dial did not raise his specific claims of error at either hearing. Dial was then given an opportunity to submit written objections and proposed findings of fact and conclusions of law. He timely submitted neither. Dial has already gotten two bites at the apple. He has not shown us why he is entitled to a third. *See Puckett*, 556 U.S. at 142 ("The fourth prong is meant to be applied on a case-specific and fact-intensive basis. . . [A] '*per se* approach to plain-error review is flawed.'")

AFFIRMED.