# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30043

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MAURICE ANTUAN SPEIGHTS,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

February 9, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:15-CR-46

Before HIGGINBOTHAM, JONES, and GRAVES, Circuit Judges.

PER CURIAM:*

A jury found Maurice Speights guilty of committing sexual abuse under 18 U.S.C. § 2242(2). The district court sentenced Speights to 121 months' imprisonment, followed by five years' supervised release, and ordered him to pay $3,570 in restitution. On appeal, Speights challenges the sufficiency of the evidence supporting his conviction, the legal and evidentiary bases for the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30043

restitution order, and the substantive reasonableness of his sentence. We affirm.

## I. BACKGROUND

On the evening of October 19, 2013, Tiffany Scott, then a first lieutenant in the army, attended a gathering of friends near Fort Polk military base in western Louisiana. Speights, who was on close terms with Scott, was also present. Scott had one or two shots of liquor over the course of as many hours. She and Speights then traveled to the home of Scott's friend, Kiasha Hamilton, who lived on-base at Fort Polk. There, Scott had at least two more shots of liquor—one with Speights' encouragement—and began to show signs of intoxication. Later that night, Scott, Speights, and Hamilton went to a bar. By the time the three left at around 2:00 a.m., Scott was noticeably drunk and had to be helped into Hamilton's truck. On the drive back, Scott was slumped over in the backseat and, according to Hamilton, "had basically passed out." When they arrived at Hamilton's house, Speights and Hamilton carried Scott, who was largely unresponsive, to an upstairs bedroom. They put Scott into the bed fully-clothed, and she went directly to sleep. Hamilton initially told Speights to spend the night in another room, but when he complained that the room was too hot, Hamilton told him he could sleep on the floor in Scott's room, which had the only fan in the house. Hamilton then went to her own room to sleep.

Scott testified that she was unconscious throughout the night, except for one point when she briefly awoke to find Speights on top of her. Speights said something like "I got this," and Scott passed out again. The next morning, Scott found Speights lying next to her in the twin-sized bed. Scott's pants were unbuttoned and unzipped. She immediately felt that something was wrong but could not recall what had happened. Hamilton entered the room, told Scott how drunk she (Scott) had been the previous night, and asked whether Scott remembered various events that had happened. Scott said she did not. Scott

2

then went to the bathroom and noticed blood on a tissue when she wiped herself. Scott, who is openly lesbian, had never had sex with a man. Feeling embarrassed, Scott told Hamilton that she and Speights were leaving. Scott and Speights got into Scott's car, where Scott repeatedly asked Speights what he had done to her. Speights said he did not remember. Scott asked whether he used protection; Speights again said he did not remember. Speights asked Scott whether she would forgive him and whether she would tell anyone. Scott told Speights to get out of the car and called him a coward. When she arrived home, she took a shower.

Scott contacted a sexual harassment representative and went to the hospital for an examination. There, Scott reported that she was sure there had been penetration. A physical examination did not reveal any visible injuries. Initially, Scott made her report restricted out of embarrassment that her chain of command could find out about the incident. But on December 10, 2013, after several sessions of counseling, she granted access to the Army's Criminal Investigation Command (known as "CID"). CID interviewed various witnesses and examined the scene at Hamilton's residence. CID also requested the assistance of the FBI, which located Speights in Florida. In an interview with the FBI, Speights stated that he encountered Scott at the bar and did not know she had been drinking. He and Scott then went to the apartment of one of Scott's friends, where, according to Speights, the two briefly had consensual sex.

On March 12, 2015, Speights was indicted on one count of sexual abuse under 18 U.S.C. § 2242(2). A two-day trial was held. After the Government presented its case, Speights moved for a judgment of acquittal, which the district court denied. Speights did not take the stand, but the FBI agent who interviewed him testified about the account Speights had given. The jury unanimously found Speights guilty.

No. 17-30043

The presentence report (PSR) calculated Speights' offense level to be 30, which corresponded to a range of 97–121 months in prison under the Sentencing Guidelines. The PSR included a "Victim Impact" section stating, in pertinent part:

> A Declaration of Victim Losses was received from the victim, Tiffany Scott. The Declaration of Victim Losses states the following:
>
> I, Captain Tiffany Scott, am a victim in the above referenced case. I believe that I am entitled to restitution in the total amount of $3,570.00.
>
> My specific losses, harms, or costs as a result of this offense are summarized as follows:
>
> – From November 2013 to April 2015 I drove to Behavioral Health appointments twice a week. Gas - $1500
> – Clothing taken for evidence - $70
>
> \*     \*     \*
>
> – After the incident I isolated myself from the world and felt lost. I went into deep depression. I was not eating and had no energy to do anything. That was not like me because I am a very social being. I had to fly my grandmother out for a few months, to help me get back to myself.
> – Flight/cost of living for 3 months - $2,000
>
> \*     \*     \*

At the sentencing hearing, Speights, citing his limited criminal history and other mitigating factors, argued for a sentence at the low end of the Guidelines range. The district court, stating that it had "not heard one word of sympathy for the victim," adopted the PSR's findings and sentenced Speights to 121 months in prison, followed by five years of supervised release. The court also ordered Speights to pay the full $3,570 in restitution requested by Scott. Speights objected, arguing that Scott did not qualify for restitution under 18

No. 17-30043

U.S.C. § 3663A and that there had been "no proof of any expenses incurred." The district court overruled the objection.

This appeal followed.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

To obtain a conviction for sexual abuse under § 2242(2), the Government must prove beyond a reasonable doubt that: (1) the defendant knowingly engaged in a "sexual act" with the victim; (2) the act took place within the special maritime or territorial jurisdiction of the United States, or certain other locations specified in the statute; and (3) the defendant knew the victim was either (a) "incapable of appraising the nature of the conduct" or (b) "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242(2); *see United States v. Bruguier*, 735 F.3d 754, 757–63 (8th Cir. 2013) (en banc) (holding that § 2242(2) requires the defendant to have knowledge of the victim's incapacity or inability to consent).[1] Speights disputes only the third element, asserting there is insufficient evidence that he knew Scott was physically incapable of declining participation in the sexual act.

In reviewing a challenge to the sufficiency of the evidence supporting a conviction, we ask "whether, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Applying that standard to the case at hand, we conclude that a rational jury

---

[1] This circuit has not previously confronted the question decided by the Eighth Circuit in *Bruguier*. Since the parties do not dispute that a mens rea of knowledge is required under the third element, we will assume as much for purposes of this case only. We express no opinion on whether § 2242(2) actually requires that a defendant have knowledge of the victim's incapacity or inability to consent.

could have found that Speights knew Scott was physically incapable of declining participation in the sexual act Speights committed. Ample testimony indicated that Speights knew that Scott was intoxicated to the point of unconsciousness. In addition, Scott testified that she had passed out, briefly awoke to find Speights on top of her, and then passed out again. *See United States v. Fasthorse*, 639 F.3d 1182, 1184 (9th Cir. 2011) ("'[A] reasonable jury may conclude that a person who is asleep when a sexual act begins is physically unable to decline participation in that act.'" (quoting *United States v. Wilcox*, 487 F.3d 1163, 1169 (8th Cir. 2007))). Speights gave a conflicting account to the FBI, but the jury was not required to credit his version of events, and when viewing the evidence in the light most favorable to the verdict, we must assume that it did not. *See United States v. Winkler*, 639 F.3d 692, 700 (5th Cir. 2011).

## B.  The Restitution Order

Speights challenges the district court's restitution order on two grounds. We review "the legality of a restitution order de novo and the amount of the restitution order for an abuse of discretion." *United States v. Adams,* 363 F.3d 363, 365 (5th Cir. 2004).

First, Speights asserts that the restitution order is not supported by adequate evidence because it is based entirely on Scott's "unaudited victim impact statement," as incorporated into the PSR. Generally speaking, "a PSR bears sufficient indicia of reliability" for a court to rely on its contents for sentencing purposes. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999); *accord United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012). It is true that "mere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indicia of reliability into facts a district court may rely upon." *Harris*, 702 F.3d at 230 n.2. We do not view Scott's declaration as falling into this latter category, however. Scott's statement provides

sufficient factual details to support each portion of the total amount of restitution she sought and is thus unlike the sort of "[b]ald, conclusionary statements [that] do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Elwood*, 999 F.2d 814, 817–18 (5th Cir. 1993); *see also United States v. Sharma*, 703 F.3d 318, 323–24 (5th Cir. 2012) (district court abused its discretion by awarding restitution based on PSR that contained "obvious mistakes" suggesting that the Probation Office failed to give "any meaningful scrutiny to the actual losses" suffered).

Second, Speights argues that 18 U.S.C. § 3663A does not authorize restitution for the $2,000 in costs Scott incurred when she arranged for her grandmother to travel and live with her for several months as social support following the incident, or for the $1,500 Scott spent on gas while travelling to mental health appointments for a year and a half.[2] We need not decide whether these losses fit into the categories delineated in 18 U.S.C. § 3663A(b) because they are plainly compensable under 18 U.S.C. § 2248.[3] Section 2248 requires a court to order restitution in "the full amount of the victim's losses," which it defines to include: "medical service relating to physical, psychiatric, or psychological care"; "necessary transportation [and] temporary housing . . . expenses"; and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2248(b)(1), (3). The factual information in the PSR

---

[2] Speights concedes that the $70 in restitution for clothing seized as evidence is authorized by statute.

[3] Speights asserts that the Government waived its argument that § 2248 authorized the restitution order by failing to raise that argument before the district court. Speights has not adequately briefed this argument; in particular, his conclusory assertion fails to grapple with the mandatory nature of restitution under § 2248. *See* 18 U.S.C. § 2248(a), (b)(4). Although neither the district court nor the PSR cited § 2248, this court may affirm a restitution order "in the absence of express findings if the record provides an adequate basis to support the restitution." *Sharma*, 703 F.3d at 322 (internal quotation marks and citation omitted).

reasonably suggests that Speights' offense proximately caused Scott to incur these losses and belies any suggestion that the causal link here is so attenuated that Scott's losses were a "mere fortuity." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014).

We perceive no basis for overturning the district court's restitution order.

## C. Substantive Reasonableness of the Sentence

Speights challenges his 121-month sentence as substantively unreasonable. Since it falls within the properly calculated range set forth by the Guidelines, the sentence is entitled to a rebuttable presumption of reasonableness. *United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011). Speights briefly argues that the district court did not adequately consider a variety of mitigating factors, including his lack of criminal history and the requirement that he register as a sex offender upon release. However, he raised these same arguments during his sentencing hearing, and the district court considered them before it handed down the sentence. A defendant's mere disagreement with his sentence, standing alone, is insufficient to rebut the presumption of reasonableness. *United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010).

## III.  CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.