# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2014

No. 12-31172

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

SHONDRELL CAMPBELL,

Defendant–Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CR-77-1

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Shondrell Campbell ("Campbell") pleaded guilty to a single count of aiding and assisting in the preparation of and production of false and fraudulent tax returns. She appeals the district court's order of restitution. We reverse and remand.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31172

## I. FACTUAL AND PROCEDURAL BACKGROUND

Campbell owned Unlimited Tax Service, a tax preparation business. In 2002, Campbell applied for and obtained an Electronic Filers Identification Number ("EFIN") so that Unlimited Tax Service could electronically transmit returns to the IRS. In 2003, the IRS Fraud Detection Center ("FDC") discovered a significant amount of unsubstantiated tax returns that Campbell had filed on behalf of Unlimited Tax Service. During the FDC's ensuing investigation, the IRS discovered that Campbell had filed fraudulent individual tax returns on behalf of her clients by including false credits, deductions, income, and expenses on the returns. Unbeknownst to her clients, Campbell had the refunds deposited in her own bank account, and then paid the clients a lesser amount.

Upon discovering the fraudulent tax returns, the IRS suspended Campbell's EFIN. Between April 2005 and April 2011, however, Campbell directed others to apply for EFINs. As a result of these other EFINs, between 2004 and 2010, Campbell filed 1,588 allegedly fraudulent tax returns. The IRS paid a total of $ 3,738,475 in refunds on these fraudulent tax returns.

Campbell was charged in a twenty-count second superseding indictment. Count 1 charged Campbell with conspiracy to aid and assist in the preparation of and production of false and fraudulent tax returns, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2). Counts 2 through 18 charged Campbell with aiding and assisting in the preparation of and production of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2). Count 19 charged Campbell with endeavoring to interfere with the administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a). Finally, Count 20 charged Campbell with obstruction of justice, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1503.[1]

---

[1] Following her first indictment, law enforcement officials caught Campbell advising a witness to avoid service of a grand jury subpoena and to lie if brought before the grand jury.

No. 12-31172

In February 2012, Campbell pleaded guilty to Count 12. In the factual basis, Campbell admitted to filing a fraudulent tax return on or about April 15, 2009. In her plea agreement, Campbell agreed to pay restitution. Campbell also agreed to an appeal waiver, by which Campbell agreed to waive her right to appeal her conviction and sentence, except to the extent a "sentence imposed [was] in excess of the statutory maximum." The presentencing report ("PSR") calculated an advisory guideline range of 97 to 121 months of imprisonment. However, because § 7206(2) imposed a maximum sentence of 36 months, the guideline range was restricted accordingly.

Campbell filed a sentencing memorandum raising nineteen objections to the PSR. At the sentencing hearing, two witnesses testified: the government presented the testimony of Special Agent Jason Boyles of the IRS Criminal Investigation Division as to the amount of the restitution, and Campbell called her mother to testify as to her character. Agent Boyles testified that after Campbell's EFIN was suspended, she used EFIN numbers that were fraudulently obtained in other people's names. Agent Boyles also testified to the number of returns Campbell filed annually and the total annual amount of refunds these returns yielded. Since Campbell was not authorized to use EFINs obtained by other individuals, the Government argued that the tax returns filed under these EFINs were all fraudulent, and Campbell was thus responsible for the entire amount of the refunds these returns generated.

After hearing all the testimony, the district court concluded that the findings in the PSR regarding the guideline calculations, the amount of loss, and restitution were correct. The district court sentenced Campbell to eighteen months of imprisonment and ordered her to pay $3,738,475 in restitution.[2]

---

[2] In light of Campbell's financial condition, the district court ordered the restitution be paid at a rate of seventy-five dollars per month.

No. 12-31172

Within fourteen days after sentencing, Campbell filed a pro se motion under Federal Rule of Criminal Procedure 35(a) ("Rule 35(a)") to reconsider sentencing. In her motion, Campbell contested the restitution amount, arguing that she could only be held accountable for tax losses caused by the offense of conviction. She further asserted that she would never have entered into the plea agreement, which did not specify a specific restitution amount, had she known that "relevant" conduct would be considered in calculating the amount of the restitution she owed to the IRS.

The district court noted that Campbell was represented by counsel at the time the court received her pro se motion. Nevertheless, to the extent that Campbell's motion could be construed as a motion to reconsider, the district court denied the motion on the merits.

## II. JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. Campbell timely filed a notice of appeal from the district court's judgment of sentence. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III. DISCUSSION

On appeal, Campbell argues that the district court erred in ordering her to pay restitution in excess of the loss caused by the offense of conviction. In response, the Government first contends that Campbell's appeal waiver should bar the instant appeal. Next, the Government insists that Campbell failed to preserve her argument on appeal. Because we hold that Campbell's appeal falls within the plea agreement's exception and that Campbell adequately preserved her argument on appeal, we reach the merits of Campbell's argument and hold that the district court abused its discretion by ordering restitution above the amount authorized by statute.

## A.    Appeal Waiver Exception

The Government seeks to enforce the appeal waiver provision in Campbell's plea agreement.  This Court reviews de novo whether an appeal waiver bars an appeal.  *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002).  To determine the validity of an appeal waiver, this Court conducts a two-step inquiry.  *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).  Specifically, this Court considers whether the waiver was made knowingly and voluntarily and whether, under the plain language of the plea agreement, the waiver applies to the circumstances at issue.  *Id.*  In determining whether a waiver applies, this Court employs ordinary principles of contract interpretation, construing waivers narrowly and against the Government.  *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006).

In the instant case, the written appeal waiver stated that Campbell waived the right to appeal her conviction and sentence on direct appeal, except in the case of a sentence in excess of the statutory maximum.  Campbell also signed the agreement, acknowledging her agreement.  At rearraignment, the district court asked Campbell whether she understood the terms of the plea agreement and its appeal waiver provision.  Campbell stated that she understood.  Campbell further stated that no one had forced or compelled her to plead guilty.  Thus, the appeal waiver was entered knowingly and voluntarily and satisfies the first step of the two-part inquiry.  *See United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005).

Campbell nevertheless contends that the appeal waiver contained in her plea agreement does not bar her present appeal.  The appeal waiver states that Campbell waived the right to appeal her conviction and sentence on direct appeal, except in the case of a sentence "in excess of the statutory maximum." Campbell contends that the appeal waiver does not bar her claim that the restitution amount exceeded the statutory maximum under 18 U.S.C.

§ 3663(a)(2). Campbell relies on *United States v. Chemical & Metal Industries, Inc.*, (*C&MI*), 677 F.3d 750 (5th Cir. 2012). In *C&MI*, this Court found the appeal waiver—which contained a similar "in excess of the statutory maximum" exception—did not bar the defendant's challenge to the restitution award. *Id.* at 752. The Court reasoned that (1) 18 U.S.C. § 3664 does not authorize a district court to enter a restitution order that exceeds the victim's losses; and (2) an appeal of such an order would be an appeal of a sentence exceeding the statutory maximum. *See id.* at 752. *C&MI* controls Campbell's case. Just like in *C&MI*, Campbell's appeal falls within the exception to the waiver appeal that the parties agreed to in the plea agreement.

## B.    Adequate Preservation of Argument

Campbell contends that she preserved her arguments both in her objections to the PSR and in her timely pro se motion filed pursuant to Rule 35(a). In reviewing her objections to the PSR, it is clear that Campbell did not raise the claims she now raises on appeal until she filed her pro se Rule 35(a) motion. Although the district court was not required to consider her pro se motion given that she was represented by counsel, the court denied the motion on the merits. The Government cites no case, and we have found none, that suggests that a district court would be prohibited from exercising its discretion to consider a pro se motion from a defendant who is also represented by counsel. Thus, even if Campbell was not entitled to file a pro se Rule 35(a) motion, the district court had the discretion to consider it on the merits. *See United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (noting that district court has inherent power to control its own docket). We note, too, that Campbell was no longer represented by counsel when the district court entered its order.

Having determined that Campbell's Rule 35(a) motion adequately raised the issue to the district court, we must determine whether, in general, a Rule 35(a) motion allows a district court to correct the alleged error at issue here.

No. 12-31172

"Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Rule 35(a). The Advisory Committee Notes to Rule 35(a) explain that Rule 35(a) was intended to codify the results in *United States v. Cook*, 890 F.2d 672 (4th Cir. 1989), and *United States v. Rico*, 902 F.2d 1065 (2d Cir. 1990). *Id.* advisory committee's notes (1991 Amendment). In *Cook,* the appellate court upheld the district court's decision to amend a sentence that was not authorized under the sentencing guidelines as they existed at the time, and thus, "was not a lawful one." 890 F.2d at 674–75. In *Rico*, the appellate court upheld the district court's decision to correct a sentence that mistakenly applied a plea agreement and constituted an "illegal sentence." 902 F.2d at 1068. Thus, these cases indicate that a 35(a) motion is intended to correct a sentence that was unlawful. *See Rico*, 902 F.2d at 1068*; Cook,* 890 F.2d at 674–75; *see also United States v. Watkins*, 450 F.3d 184, 185 (5th Cir. 2006) (determining that a Rule 35(a) motion preserved a Sixth Amendment argument).

We determine, as discussed below, that Campbell's sentence is not lawful under *United States v. Hughey*, 495 U.S. 411 (1990), because the restitution order exceeds the scope of the offense of conviction. Therefore, Campbell preserved her appellate claims via her Rule 35(a) motion. Thus, we review the district court's restitution award under an abuse of discretion standard. *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004).

**C.    The Restitution Award**

Restitution is generally available for losses stemming from the conduct of the offense of conviction. *Hughey*, 495 U.S. at 420 ("[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order."); *see also United States v. St. Junius*, 2013 U.S. App. LEXIS 25155, at \*52–53 (5th Cir. Dec. 18, 2013) (substitute opinion on petition for

rehearing) (holding, on plain-error review, that restitution is limited to losses stemming directly from the offense of conviction).

Beyond that, the restitution statute, 18 U.S.C. § 3663, does not authorize restitution orders compelling payment to the IRS for a Title 26 offense. *See United States v. Stout*, 32 F.3d 901, 905 (5th Cir. 1994) (holding that § 3663 only permits separate restitution orders for offenses under Title 18 or 49 and vacating restitution award ordered for offense under Title 26). Section 3663 does, however, allow the sentencing court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." § 3663(a)(3); *see also Stout*, 32 F.3d at 905 n.5.

A sentencing court may also require restitution to the IRS for a Title 26 offense as a condition of supervised release. 18 U.S.C. § 3583(d)(3) (authorizing a sentencing court to impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate"); *Miller*, 406 F.3d at 329 ("[A]lthough . . . 18 U.S.C. § 3663 [ ] does not expressly cover tax offenses such as that under which Miller was convicted, § 3583(d) authorizes such restitution as a condition of Miller's supervised release."). Section 3583(d) allows the sentencing court to impose a condition of supervised release requiring restitution to the IRS without the defendant's agreement, but only if the restitution is "limited to losses from the crime of conviction." *United States v. Nolen*, 523 F.3d 331, 332–33 (5th Cir. 2008); *see also Stout*, 32 F.3d at 904 (vacating restitution order and remanding for resentencing where defendant never expressly agreed to pay restitution and noting that "[s]entencing courts are permitted to impose restitution as a condition of supervised release to the extent agreed to by the government and the defendant in a plea agreement." (citations omitted))

Campbell acknowledges that the plea agreement allowed the consideration of relevant conduct for the purposes of calculating her guideline range, but not

for determining the amount of restitution. Campbell contends that the "general statement in the plea agreement that § 3663 would apply did nothing to extend her liability beyond *Hughey*," i.e., that restitution would be limited to the loss associated only with the offense of conviction. Because the count of conviction to which she pleaded guilty states a loss of only $7,500, Campbell contends that her restitution should be limited to that amount.

The Government asserts that the plea agreement's reference to § 3663 gave the district court authority to order restitution in accordance with the terms of the plea agreement. According to the Government, the plea agreement provided that relevant conduct set forth in the second superseding indictment and "any other applicable conduct" would be used in the calculation of Campbell's sentence, including the amount of restitution she owed. The Government further argues that Campbell acknowledged that relevant conduct would be considered in the calculation of her restitution in her factual basis, at rearraignment, and at sentencing. Alternatively, the Government contends that the restitution order was proper as a condition of Campbell's supervised release.

We hold that Campbell did not agree to the imposition of restitution beyond the amount stemming from the offense of conviction. Contrary to the Government's assertion, Campbell did not acknowledge at rearraignment that relevant conduct would be included in the calculation of restitution. The transcript merely reflects that Campbell acknowledged that she "may additionally be required to reimburse any victim for the amount of loss under the victim's restitution law if that law is at all applicable to these proceedings." The factual basis, like the plea agreement, generally mentions relevant conduct when calculating Campbell's guideline calculation. However, there is no mention of relevant conduct in connection with restitution, thus distinguishing Campbell's case from those where this Court has held the district court properly considered relevant conduct beyond the offense of conviction in the restitution order. *See*

*United States v. Simmons*, 420 F. App'x 414, 421 (5th Cir. 2011) (unpublished) (per curiam) (rejecting defendant's argument that restitution should be limited to offense of conviction because plea agreement provided that defendant would pay restitution and "'that restitution [was] not limited to the amounts charged in the Indictment'"); *Miller*, 406 F.3d at 329–30 (upholding restitution order that was not limited to the offense of conviction because defendant agreed in plea agreement that restitution would include "all relevant conduct, not limited to that arising from the offenses of conviction alone" (internal quotation marks omitted)).   At oral argument, the Government conceded that Campbell's plea agreement did not expressly provide for the consideration of relevant conduct in calculating restitution.   Ultimately, the restitution order was unlawful: 18 U.S.C. § 3663 does not authorize restitution orders compelling payment to the IRS for a Title 26 offense, and 18 U.S.C. § 3663(a)(3) only permits restitution to the extent agreed to in the plea agreement.   Thus, the district court here was authorized to order "an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED for resentencing consistent with the above.