# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50135

United States Court of Appeals
Fif h Circuit

**FILED**

October 17, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

>    Plaintiff - Appellee

v.

LAURIE MAYFIELD, also known as Laurie H. Scott, also known as Laurie Scott,

>    Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CR-269

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

Laurie Mayfield pleaded guilty to wire fraud under 18 U.S.C. § 1343 for her role in issuing unauthorized checks to herself and concealing accounting irregularities via false ledger accounts while employed at D'Hanis State Bank (DHSB). At sentencing, the district court ordered Mayfield to pay restitution in the amount of $817,892.32 for actual loss pursuant to U.S.S.G. § 5E1.1.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50135

Mayfield appeals the district court's finding of actual loss for purposes of restitution. Because we conclude that Mayfield's plea agreement does not bar her instant appeal and that the district court did not abuse its discretion in finding an actual loss of $817,892.32 for restitution purposes, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

From 2004 to 2014, Mayfield worked as a cashier and president of D'Hanis State Bank (DHSB), where one of her responsibilities was to act as bookkeeper and reconcile all bank statements. Due to Mayfield's issuance of unauthorized checks in the amount of $68,681.30 to herself, as well as other accounting irregularities, by 2014, the bank was carrying an out of balance amount ("outage") of approximately $830,000. Mayfield concealed the outage by entering false ledger transactions. After concealing the outage, Mayfield generated and filed false financial statements with federal and state bank regulators which made it appear that the bank possessed $830,000 in assets that it did not possess.

Medina Bank (MB) was a bank holding company that owned DHSB. In September 2014, Vantage Bank (VB), also a bank holding company, purchased MB, including DHSB. Prior to the purchase, Mayfield emailed to officers of VB the falsified financial statements that she had created containing the outage, which, again, reflected DHSB's assets as being $830,000 greater than they actually were. Mayfield feared that if the officers of VB became aware of the $830,000 outage, VB would not make the purchase or provide the money consideration for the purchase.

The presentence report (PSR) contained a victim impact statement from VB setting out how Mayfield's false ledgers resulted in an over-valuation of MB and DHSB, impacted the price of the acquisition, and caused them to use considerable resources to discover and prove up the fraud. VB also concluded

2

that its injury was a direct result of Mayfield's actions and that it sustained a loss of $817,892.32, the amount of the outage.

The PSR recommended that Mayfield's base offense be enhanced by 14 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because her offense involved a loss to VB in the range of $550,000 to $1,500,000. It further recommended that, as a part of her sentence, Mayfield be ordered to pay restitution to VB in the amount of $817,892.32, pursuant to U.S.S.G. § 5E1.1.

Mayfield filed an objection to the PSR disputing many of the PSR's recitation of facts, particularly the facts relayed in VB's victim impact statement. She also objected to the PSR's 14-level enhancement pursuant to § 2B1.1(b)(1)(H), asserting that a loss of $830,000 had not been established, and, even it had, she did not cause it. She further argued that only a six-level increase was warranted for the $68,381.30 in unauthorized checks she admitted issuing. She requested a downward variance, based on the fact that she did not receive any benefit of the $830,000, entered into the fraud scheme only to keep the bank from closing, lost her livelihood, and was remorseful. She also objected to the amount of restitution recommended by the PSR, claiming that she did not cause the loss attributable to the outage.

The district court conducted a sentencing hearing, which was continued for the submission of additional briefing from the parties on whether the loss caused by Mayfield and the corresponding restitution should be calculated at $817,892, and not $63,711. At the continued hearing, the district court sentenced Mayfield to 24 months of imprisonment, three years of supervised release, and ordered her to pay $817,892.32 in restitution. Mayfield subsequently filed this appeal.

**I.    Whether the appeal waiver in Mayfield's plea agreement bars the instant appeal of the district court's restitution order.**

No. 16-50135

We review the issue of whether a waiver provision bars an appeal de novo. *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir.2002). Specifically, we must determine whether the waiver was knowing and voluntary and whether it applies to the circumstances at issue. *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). In determining whether a waiver applies, we employ ordinary principles of contract interpretation, construing waivers narrowly and against the Government. *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006).

Mayfield's waiver said that she "agrees to waive and give up her right to appeal her conviction or sentence on any ground, except in a case in which the sentence imposed by the court is greater than the maximum sentence authorized by statute." Mayfield does not contest the voluntariness of this waiver on appeal. Instead, she argues that the appeal waiver contained in her plea agreement did not waive her right to challenge the district court's restitution order.

This court has had differing opinions on whether a general appeal waiver bars a challenge to a restitution order. *See United States v. Smith*, 528 F.3d 423, 424-26 (5th Cir. 2008) (declining to reach issue and comparing cases from other circuits); *United States v. Lam*, No. 99-20638, 2000 WL 1468731, at 1-3 & n.2 (5th Cir. Sept. 7, 2000) (unpublished). In *Smith*, the defendant appealed an order of restitution on the basis that it was not supported by sufficient evidence. *Smith*, 528 F.3d at 424. The Government asserted that the defendant's challenge was barred by her appeal waiver. *Id*. This court noted that restitution is ordinarily considered a component of a sentence and that, in two unpublished opinions, the court had held that a general appeal waiver barred review of a restitution order where the plea agreement specifically stated that the defendant would pay restitution in an amount determined by the district court. *Id*. (citing *United States v. Hemler*, 169 F. App'x 897, 898

4

No. 16-50135

(5th Cir. 2006), and *United States v. Glynn*, 149 F. App'x 322, 323 (5th Cir. 2005)).   In *Smith*, by contrast, the plea agreement was silent regarding restitution, and the Rule 11 colloquy did not resolve whether restitution was part of the agreement.  *Id.*  Additionally, the district court did not inform the defendant that restitution was covered by the waiver.  *Id.*  However, because the appeal could easily be resolved on the merits, the *Smith* court declined to address "whether a general appeal waiver bars review of a restitution order when the plea agreement does not discuss restitution."  *Id.*

In *United States v. Lam*, no. 99-20638, 2000 WL 1468731, at 1-3 & n.2 (5th Cir. Sept. 7, 2000), this court held that an appeal waiver did not bar a challenge to restitution.  In *Lam*, the plea agreement said that the defendant agreed to pay restitution and waived his right to appeal his sentence except as to an upward departure.  However, the waiver did not mention restitution, Lam was not admonished regarding the provisions of the Mandatory Restitution to Victim's Act, and the Government conceded that the waiver did not bar an appeal of the restitution ordered.

In the most recent case of *United States v. Campbell*, 552 F. App'x 339 (5th Cir. 2014), this court held that the appeal waiver did not bar the review of a restitution order where the waiver included the language "except in the case of a sentence in excess of the statutory maximum."  *Id.* at 342, 343.  The court relied on the reasoning in *United States v. Chemical & Metal Industries, Inc., (C&MI)*, 677 F.3d 750, 752 (5th Cir. 2012), that: "(1) 18 U.S.C. § 3664 does not authorize a district court to enter a restitution order that exceeds the victim's losses; and (2) an appeal of such an order would be an appeal of a sentence exceeding the statutory maximum."  *Campbell*, 552 F. App'x at 343. This court further noted in *United States v. Keel*, 755 F.3d 752, 755-56 (5th Cir. 2014), that "an 'in excess of the statutory maximum' challenge, if properly raised on appeal, would not be barred by an appeal waiver."  *Id.* at 756.

While Mayfield acknowledged that she would be required to make restitution for any money loss, she did not acknowledge in her plea agreement or at rearraignment that she was waiving the right to appeal any restitution order.   Thus, Mayfield's appeal waiver does not bar a challenge to the restitution order.  *See Smith*, 528 F.3d at 424; *Lam*, 2000 WL 1468731, at 1.

## II.    Whether the district court abused its discretion in finding an actual loss of $817,892.32 for restitution purposes.

Ordinarily, we review "the quantum of an award of restitution for abuse of discretion." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).  A district court abuses its discretion when its ruling is "based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Crawley*, 533 F.3d 349, 358 (5th Cir. 2008) (internal quotation marks and citation omitted).  "[E]xcessive restitution awards cannot be excused by harmless error; every dollar must be supported by record evidence." *Sharma*, 703 F.3d at 323.

Mayfield asserts that she preserved her objection to the restitution award because she objected numerous times to any order of restitution above the $63,711.76 in unauthorized cashier checks that she issued.   The Government argues that Mayfield failed to preserve her objection and that review should be for plain error.   Mayfield objected to the Government's proposed restitution amount in her objections to the PSR, in her preliminary sentencing memorandum, at the initial sentencing hearing, in her subsequent sentencing memorandum, and at the continued sentencing hearing. Accordingly, she preserved her objection to the restitution order and we will review for an abuse of discretion.  *See United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992).

The Mandatory Victim Restitution Act requires a sentencing court to order restitution for a victim's "actual loss directly and proximately caused by

the defendant's offense[s] of conviction." *Sharma*, 703 F.3d at 323; 18 U.S.C. § 3663A(a). "[W]here a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme." *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007) (internal quotation marks and citation omitted). However, "restitution cannot be awarded for 'losses' attributable to conduct outside the temporal scope of the scheme charged; the same is true for conduct not charged as part of the scheme." *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013). In other words, "[a]n award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment or specified in a guilty plea, or for losses caused by conduct that falls outside the temporal scope of the acts of conviction." *Sharma*, 703 F.3d at 323 (internal footnote omitted). The Government bears the burden of proving the loss amount by a preponderance of the evidence. *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998); 18 U.S.C. § 3664(e).

Mayfield asserts that the Government failed to prove she was responsible for or the proximate cause of VB's loss of the $817,892.32. She also asserts that $380,000 of the outage existed as of 2004, but that the charging information only alleges she was engaged in the scheme from 2004 to 2014. Additionally, she argues that there was no mutual understanding of the $817,892.32 loss, that her plea agreement did not contemplate she could be ordered to pay that amount, and that she only understood she could be ordered to pay restitution for the $68,681.30 in unauthorized checks she issued. She also argues that VB did not suffer a loss as a victim, because its primary shareholder was also the primary shareholder of MB.

The statute of conviction provides, in relevant part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by

means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

The information to which Mayfield pleaded guilty establishes the elements of § 1343 and indicates that Mayfield engaged in a scheme to defraud by concealing the outage and transferring the outage to and from a correspondent bank account and two false general ledger accounts that she created. She also generated and filed false financial statements that made it appear that the DHSB had $830,000 that "it did not, in fact, possess." As the manner and means of executing the fraudulent scheme, the information states that Mayfield emailed financial statements that "improperly reflected the assets of [DHSB] as being $830,000 greater than they actually were" to representatives of VB. The information further stated that Mayfield emailed the fraudulent statements to VB representatives in order to deceive VB as to the value of DHSB. Additionally, her plea agreement said that she knew "she had knowingly devised and executed a scheme to defraud [VB] by means of false material representations concerning the assets and liabilities of [DHSB]" and "[s]he intentionally sent by wire an email communication in furtherance of the scheme to defraud."

Consistent with these allegations, Mayfield's guilty plea, and the evidence of VB's loss, the district court properly calculated the restitution at $817.892.32. Further, Mayfield's argument that part of the outage predated 2004 fails because she engaged in a scheme to defraud and hide the entire amount of the outage. Her argument that she was not the proximate cause of the loss to VB also has no merit. As the district court observed, Mayfield was not charged with theft or embezzlement of the $817,892.32. She was charged

with using interstate commerce to further her scheme to defraud and conceal the outage. *See United States v. Arledge*, 553 F.3d 881, 898 (5th Cir. 2008) ("Thus it was not an abuse of discretion for the court to award restitution that encompassed those losses resulting from the creation of fraudulent documents in furtherance of the scheme to defraud for which Arledge was convicted."). Mayfield's arguments regarding a lack of mutual understanding and her belief that she was only responsible for $68,681.30 are not supported by the record. Finally, as she offers no authority to support her claim that VB could not be a victim because VB and MB had common ownership, we find it waived. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

Accordingly, we conclude that the district court did not abuse its discretion in finding an actual loss of $817,892.32 for restitution purposes. Thus, we AFFIRM.