# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-10406

United States Court of Appeals
Fifth Circuit

**FILED**

September 9, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JEFFREY DALE ST. JOHN; LAWRENCE DALE ST. JOHN,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-310

Before DAVIS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Lawrence Dale St. John ("Dale St. John") and his son Jeffrey St. John (collectively, "Defendants") were convicted by a jury of conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and thirteen substantive counts of health care fraud in violation of 18 U.S.C. §§ 1347 & 2. Both were sentenced to prison terms and ordered to pay restitution.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10406

The Defendants raise different issues on appeal. Jeffrey St. John appeals the district court's denial of his motion for judgment of acquittal and the district court's jury instructions. Both Defendants appeal their sentences, arguing that the district court incorrectly held that the Defendants subjectively intended losses attributable to Medicare claims filed by third-parties. Dale St. John also contends that those Medicare claims were not "relevant conduct" under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.3 and that the district court erred in calculating the amount of losses attributable to the third-parties' Medicare claims. Lastly, Dale St. John also appeals the restitution order. We AFFIRM the district court's judgment in all respects.

## I. Background

Medicare is a federally-funded healthcare program primarily for people over age 65. This case implicates two types of Medicare providers: (1) home-health agencies ("HHAs"), which provide home health care for Medicare beneficiaries with limited mobility; and (2) physician housecall companies, which provide primary care, certify patients as requiring home health care ("homebound"), and engage in care plan oversight ("CPO"). Both types of providers are reimbursed by Medicare for their services.

Dale St. John founded A Medical, a physician housecall company, in 2009. He employed both a physician, Dr. Nicholas Padron, and the appellant, Jeffrey St. John.[1] Traditionally, physician housecall companies craft care plans to help homebound patients regain mobility. To receive reimbursement for these services, the companies must spend at least thirty minutes per month on CPO. CPO may be performed by a nurse or physician's assistant under the

---

[1] Dr. Padron was charged as a co-conspirator in this scheme but ultimately pleaded guilty and testified against the St. Johns at trial.

"direct supervision of the doctor that actually signed the plan." The Government alleged that A Medical manipulated the system by fraudulently billing Medicare for alleged CPO that did not satisfy these requirements. For instance, Jeffrey St. John instructed an employee to bill for CPO although no such work occurred, while Dale St. John encouraged an employee to bill for at least $30,000 in CPO per week, irrespective of whether it reflected the true amount of CPO performed.

A steady stream of patients was integral to A Medical's scheme. Without patients, A Medical would not be able to submit claims to Medicare. Traditionally, physician housecall companies certify a patient as homebound by submitting a "485 form" to Medicare and then referring those patients to an HHA for care. Here, the process worked in reverse. HHAs brought patients to A Medical for certification. By certifying a patient as homebound, A Medical ensured that it maintained a steady stream of patients, while the HHAs also obtained patients on whose behalf they could bill Medicare. Dale St. John conceded that A Medical's volume of patients, and therefore its ability to bill Medicare, was dependent on receiving referrals from HHAs. According to the Government, this created an incentive for impropriety—HHAs referred patients to A Medical in exchange for A Medical's near-certain certification of those patients as homebound. Although Dr. Padron, as A Medical's physician, signed the 485 forms certifying patients as homebound under threat of criminal or civil penalty, he testified that he signed "almost everything," or "99%" of the 485 forms Dale St. John put in front of him. According to the Presentence Report ("PSR"), many of those patients were not, in fact, homebound. Furthermore, Dr. Padron admitted that he did not supervise A Medical's nurses and physician assistants as required by law.

At sentencing, the district court adopted the PSR's recommendation that the Defendants be held culpable for losses stemming from the fraudulent CPO

No. 14-10406

claims as well as losses from fraudulent cognitive testing and nursing, fraudulent certification of patients as homebound, and all of the bills submitted by HHAs to Medicare for patients A Medical certified as homebound. The district court also adopted the PSR's loss calculations. It found the St. Johns' intended loss on claims submitted by A Medical to Medicare to be $1,463,716.14 and the actual loss to be $653,794.18. It also included the bills submitted by the HHAs to Medicare in the loss analysis, which resulted in an intended loss of $9,733,195.20 for services provided to patients of A Medical, and an actual loss of $8,957,445.87 that Medicare paid on these claims. The PSR calculated the total intended loss to be $11,196,911.34 and the actual loss to be $9,611,240.05.

The PSR recommended a base offense level of 29 for both appellants, calculated as follows: (1) Six levels because the statutory maximum term of imprisonment was 10 years, U.S.S.G. § 2B1.1(a)(2); (2) twenty levels because the intended loss of $11,196,911.34 was greater than $7 million but not greater than $20 million, U.S.S.G. § 2B1.1(b)(1)(K); and (3) three levels because the appellants were accountable for a loss of greater than $7 million but not greater than $20 million by a government healthcare program, U.S.S.G. § 2B1.1(b)(7)(A) & B(ii). The district court accepted the PSR's relevant recommendations and also ordered Dale St. John to pay restitution of more than $9.6 million, and Jeffrey St. John to pay restitution of more than $8.6 million. The Defendants timely appealed.

## II. Discussion

### A. *Motion for judgment of acquittal*

Jeffrey St. John appeals the district court's denial of his motion for judgment of acquittal. Because he raised this issue below, we review the district court's denial of the motion de novo. *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011).

No. 14-10406

Conspiracy to commit healthcare fraud consists of three elements: "(1) two or more persons made an agreement to commit health care fraud; (2) . . . the defendant knew the unlawful purpose of the agreement; and (3) . . . the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2012). Jeffrey St. John argues that his involvement in A Medical's scheme does not satisfy conspiracy's plurality requirement because the intracorporate conspiracy doctrine provides "that the acts of the agent are the acts of the corporation" and that a "corporation cannot conspire with itself." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). He maintains that his conviction for conspiring with his co-workers, Dale St. John and Dr. Padron, violates this precept.

While our court has applied the intracorporate conspiracy doctrine in antitrust and civil rights cases, we have not expanded its application to the criminal context. We decline to do so here. As we have previously observed:

> The original purposes of the rule attributing agents' acts to a corporation were to enable corporations to act, permitting the pooling of resources to achieve social benefits and, in the case of tortious acts, to require a corporation to bear the costs of its business enterprise. But extension of the rule to preclude the possibility of intracorporate [criminal] conspiracy does not serve either of these goals.

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (Former 5th Cir. Nov. 1981). We went on to state that "a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees" because "the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed." *Id.*; *see also United States v. Wise*, 370 U.S. 405, 417 (1962) (Harlan, J., concurring) ("[T]he fiction of corporate entity, operative to protect officers from contract liability, had

5

never been applied as a shield against criminal prosecutions . . . ."). Jeffrey St. John gives us no reason or basis to depart from this precept. Thus, we decline to extend the doctrine to criminal cases, and we AFFIRM the district court's denial of Jeffrey St. John's motion for judgment of acquittal.[2]

B. *Jeffrey St. John's proposed jury instruction*

Next, we consider Jeffrey St. John's argument that the district court abused its discretion by refusing to adopt his proposed jury instruction on the meaning of the word "willfully." *See United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) ("We review a district court's refusal to give a requested jury instruction only for an abuse of discretion.").

> To prove health care fraud, the Government had to show that (1) [Jeffrey St. John] knowingly and willfully executed, or attempted to execute, a scheme or artifice (a) to defraud any health care benefit program or (b) to obtain by false or fraudulent pretenses, representations, or promises any money or property owned by or under the custody or control of a health care benefit program; and (2) the scheme or artifice was in connection with the delivery of or payment for health care benefits, items, or services.

*United States v. Whitfield*, 485 F. App'x 667, 669–70 (5th Cir. 2012) (citing 18 U.S.C. § 1347(a)). The district court instructed the jury that "willfully . . .

---

[2] We also reject Jeffrey St. John's argument that the rule of lenity counsels in favor of applying the intracorporate conspiracy doctrine. The rule of lenity implements the "due-process principle that no individual [should] be forced to speculate, at peril of indictment, whether his conduct is prohibited. The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute." *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001) (citations omitted) (second and third alterations in original). "When Congress uses well-settled terminology of criminal law, its words are presumed to have their ordinary meaning and definition." *Salinas v. United States*, 522 U.S. 52, 63 (1997). As it is well-accepted that the intracorporate conspiracy doctrine does not apply in the criminal context, we decline to interpret the health care fraud statute to state otherwise without statutory language to the contrary. *See United States v. Hughes Aircraft Co.*, 20 F.3d 974, 979 (9th Cir. 1994) (declining to expand the intracorporate conspiracy doctrine to shield criminal conspiracy); *United States v. Stevens*, 909 F.2d 431, 432 (11th Cir. 1990) (same); *United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir. 1984) (same), *United States v. S & Vee Cartage Co.*, 704 F.2d 914, 920 (6th Cir. 1983) (same).

means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." Jeffrey St. John disagreed with the instruction, arguing that the court should have applied the heightened standard of willfulness required in criminal tax cases. *See Cheek v. United States*, 498 U.S. 192, 201 (1991) ("[T]he standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'"); *see also Ratzlaf v. United States*, 510 U.S. 135, 138 (1994) (applying the heightened standard to violations of a cash transaction reporting scheme). Jeffrey St. John's requested instruction would require the Government to prove that he had actual knowledge of the underlying Medicare provision he was alleged to have violated and that he acted with specific intent to violate that provision.

To prevail, Jeffrey St. John must demonstrate that the "requested instructions were (1) correct statements of the law, (2) not substantially covered in the charge as a whole, and (3) of such importance that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *Davis*, 132 F.3d at 1094 (citation omitted).

It is well established that "ignorance of the law generally is no defense to a criminal charge." *Ratzlaf*, 510 U.S. at 149. However, the Supreme Court has recognized a limited exception to this principle under certain complex statutory schemes, such as the tax code, reasoning that highly technical statutes may "ensar[e] individuals engaged in apparently innocent conduct." *Bryan v. United States*, 524 U.S. 184, 194 (1998). In those circumstances, the Court has held that a defendant acted "willfully" if the defendant was both aware of the underlying legal duty and intentionally violated that legal requirement. *See Ratzlaf*, 510 U.S. at 146–48.

No. 14-10406

While Jeffrey St. John draws parallels between the tax code and Medicare in their respective complexities, his argument is undermined by the plain language of 18 U.S.C. § 1347. *See Ratzlaf*, 510 U.S. at 146 ("Had Congress wished to dispense with the requirement [that the Defendant be aware his conduct was unlawful], it could have furnished the appropriate instruction."). The statute criminalizing healthcare fraud, the offense of conviction, states that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section." 18 U.S.C. § 1347(b); *see Whitfield*, 485 F. App'x at 670 (requiring the government to prove only that the defendant had knowledge of the Medicare fraud and the intent to further the fraud). In the face of this language, we conclude that *Cheek*'s rationale does not apply here such that the district court did not abuse its discretion by rejecting Jeffrey St. John's proposed instruction.

C. *Intended loss amount*

Both Defendants argue the district court erred in calculating the intended loss caused by the St. Johns. The base offense level for fraud offenses is calculated, in part, pursuant to the table at Section 2B1.1 of the Sentencing Guidelines. *See* U.S.S.G. § 2B1.1(b)(1). The greater the loss, the larger the enhancement in offense level recommended by the Guidelines. *See id.* In calculating the Defendants' sentence, "loss is the greater of actual loss or intended loss," § 2B1.1 cmt. 3(A), where actual loss "means the reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss "means the pecuniary harm that was intended to result from the offense[] and . . . includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." § 2B1.1 cmt. 3(A)(i), (ii).

8

No. 14-10406

The PSR calculated the St. Johns' intended loss to be $11,196,911.34, warranting a 20 base offense level increase.[3]  *See* U.S.S.G. § 2B1.1(b)(1)(K). The PSR also calculated the actual loss to be $9,611,240.05, but it adopted the larger number for the purpose of sentencing.  *See* § 2B1.1 cmt. 3(A).  The district court accepted the PSR's loss calculations and sentenced the St. Johns accordingly.

Dale St. John raises several objections to the "intended loss" calculation.[4] Jeffrey St. John raises one. However, they both fail to brief any objection to the "actual loss" calculation in their initial briefing.[5]  To the extent they intended to appeal the actual loss determination, they failed to adequately brief it, so it is abandoned.  *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006).

As a result, we conclude that any error in the district court's intended loss calculation was harmless.  "Loss" for the purpose of sentencing is the greater of actual or intended loss.  *See* U.S.S.G. § 2B1.1 cmt. 3(A).  Both the Defendants' actual and intended loss warrant a 20 base offense level increase. Even if the district court erred in calculating the Defendants' intended loss, the Defendants have not properly contested the district court's "actual loss" determination.  An error that does not affect the Defendants' offense level is harmless.  *See United States v. Solis*, 299 F.3d 420, 462 (5th Cir. 2002) ("Moreover, because the relevant conduct finding challenged here did not affect

---

[3] To reach this conclusion, the PSR added the total value of claims A Medical submitted to Medicare, $1,463,716.14, to the total value of claims submitted by HHAs to Medicare on behalf of patients certified as homebound by A Medical, $9,733,195.20.

[4] Jeffrey St. John addresses only whether he subjectively intended the loss, while Dale St. John also makes various arguments premised upon the notion that the district court included amounts in the intended loss that exceed the scope of the offenses proven.

[5] Dale St. John discusses actual loss only as part of his restitution challenge, and did not substantively address these issues until his reply brief, which is not sufficient.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004).  Jeffrey St. John does not take issue with the actual loss calculation at all.

[the defendant's] combined adjusted offense level, any error was harmless."); *United States v. Chon*, 713 F.3d 812, 822 (5th Cir. 2013) (similar); *United States v. Salinas*, 310 F. App'x 632, 633–34 (5th Cir. 2009) (similar).

Even if we were to construe their briefs more liberally, Jeffrey St. John's arguments were relevant only to intended loss, and we conclude, therefore, that any error as to his offense level is harmless. Dale St. John made two arguments under an issue attacking only the "intended loss" calculation that are arguably relevant to both actual and intended loss: that the loss sum included sums that were not "relevant conduct" and that the district court should have reduced the amount of any loss by the value of legitimate services provided. Even if we were to construe these arguments to attack the actual loss calculation (which are murky at best, given the framing of the issue), we conclude that Dale St. John is not entitled to relief. We conclude that the HHA amounts were properly included as "relevant conduct" as part of the same "common scheme" as the offense of conviction. *See United States v. Ocana*, 204 F.3d 585, 589 (5th Cir. 2000).

We also conclude that the district court did not err in assessing the entire amount of actual loss despite Dale St. John's argument (asserted for the first time on appeal) that the district court should have subtracted the value of any legitimate services under *United States v. Klein*, 543 F.3d 206, 214 (5th Cir. 2008). We conclude that this case is governed by the rule discussed in *United States v. Hebron*, 684 F.3d 554, 563 (5th Cir. 2012), that where the fraud is so pervasive that separating legitimate from fraudulent conduct "is not reasonably practicable, the burden shifts to the defendant" to prove any legitimate amounts. In this case, the fraud is so pervasive that the district court did not plainly err in failing to subtract any amounts from the actual loss calculation in the absence of evidence from the defendant as to specific legitimate services.

No. 14-10406

D. *Restitution*

The district court awarded restitution pursuant to the Mandatory Victims Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663. "The MVRA limits restitution to the actual loss directly and proximately caused by the defendant's offense of conviction." *United States v. Sharma*, 703 F.3d 318, 323 (5th Cir. 2012); *see also* 18 U.S.C. § 3663A(a)(1), (a)(2). In addition to the losses to Medicare from A Medical's fraudulent billing for CPO, the district court ordered Dale St. John to pay restitution for each HHA reimbursement claim as well as other, non-CPO fraudulent claims submitted by A Medical. Dale St. John contests the restitution award on appeal, arguing that the indictment did not allege that the HHAs' Medicare reimbursement claims and the non-CPO fraudulent billing was part of A Medical's scheme to defraud Medicare. According to Dale St. John, the district court's restitution order violates the well-established principle that "[a]n award of restitution cannot compensate a victim for losses caused by conduct not charged in the indictment . . . or for losses caused by conduct that falls outside the temporal scope of the acts of conviction." *Sharma*, 703 F.3d at 323.

Again, we address whether Dale St. John preserved error before the district court. While we traditionally review "the quantum of an award of restitution for abuse of discretion," *see id.* at 322, where the defendant fails to preserve his objection to the restitution order, we review the defendant's objection for plain error, *see United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005). Dale St. John argues that his broad statements to the district court that he is not accountable for the HHAs' Medicare reimbursement claims were sufficient to preserve his objection to the restitution order. We disagree. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Torres-Perez*, 777 F.3d 764, 767 (5th Cir. 2015)

(citation omitted).   It is an open question in this circuit as to whether an objection to the district court's Guidelines determination is sufficient to preserve an objection to a restitution order where "the arguments are essentially the same." *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007).   Dale St. John's vague objection to the district court's Guidelines determination neither informed the court that he intended to object to the district court's restitution order nor informed the district court of the legal basis for his objection.  As such, we review the validity of the restitution order for plain error.  *See United States v. Maturin*, 488 F.3d 657, 659–60 (5th Cir. 2007).   However, we note that "a sentence which exceeds the statutory maximum is an illegal sentence and therefore constitutes plain error." *United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000).

"The general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *Maturin*, 488 F.3d at 660–61.  Dale St. John argues that he can only be ordered to pay restitution for conduct which was explicitly referenced in the indictment.  In *United States v. Adams*, we held that "the underlying scheme to defraud is defined, in large part, by the actions alleged in the charging document."  363 F.3d 363, 366 (5th Cir. 2004).  Dale St. John maintains that the indictment only referenced A Medical's CPO scheme, but neglected any mention of the HHAs' billing practices and other, non-CPO-related billing by A Medical.  Therefore, he argues the district court's restitution order plainly erred.

Dale St. John's argument oversimplifies both our case law and the indictment in this case. While *Adams* noted that the indictment in large part defines the scope of a scheme to defraud, we have held that "where a fraudulent scheme is an element of the conviction, the court may award restitution for

'actions pursuant to that scheme.'" *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002) (citation omitted).  We have further explained that because "health care fraud[] requires proof of a scheme as an element, [the] conviction can support a broad restitution award." *United States v. Essien*, 530 F. App'x 291, 302 (5th Cir. 2013).

The HHAs' Medicare reimbursement claims were a necessary component of A Medical's scheme to defraud Medicare.  As the indictment states, "[t]he primary purpose of A Medical was to certify and recertify Medicare beneficiaries for home health services" because once A Medical "established a new patient . . . [A Medical] would submit billing for fraudulent claims for CPO."  While the indictment does not explicitly mention the HHAs, it does allege that A Medical's primary function was certifying patients as homebound—a function A Medical performed for HHAs.  Further, the indictment alleged that certifying patients as homebound would make them eligible for "home health services."  The HHAs' Medicare reimbursement claim was for "home health services."  Thus, the indictment references the *exact* conduct which Dale St. John argues that the indictment omitted.  Furthermore, the indictment makes clear that those certifications were a necessary component of A Medical's ability to execute its scheme to "submit billing for fraudulent claims for CPO."

The district court also ordered restitution for non-CPO-related fraudulent billing by A Medical.  These non-CPO-related services included billing for certifications and re-certifications of patients for home health services, physician home visits, testing, and other services.  As explained above, the indictment acknowledged that certifying patients as homebound was an integral component of A Medical's scheme to obtain patients to bill for CPO.  As such, A Medical's billing for services attendant to certifying patients

No. 14-10406

as homebound was "pursuant to its scheme" to bill for CPO fraud and thus it was not plain error to incorporate these sums in the restitution award.[6]

Finally, Dale St. John filed a Rule 28(j) letter arguing that the restitution order included losses that occurred outside the temporal scope of the indictment. It is well established that "[a]n award of restitution cannot compensate a victim . . . for losses caused by conduct that falls outside the temporal scope of the acts of conviction." *Sharma,* 703 F.3d at 323. Because Dale St. John did not raise this issue before the district court, plain error review would normally apply. *See United States v. Lozano,* 791 F.3d 535, 537, 539 (5th Cir. 2015). However, this court will not consider an issue raised for the first time in a Rule 28(j) letter. *See United States v. Sanchez-Villalobos,* 412 F.3d 572, 577 (5th Cir. 2005), *abrogated on other grounds by Carachuri-Rosendo v. Holder,* 560 U.S. 563 (2010). In light of this waiver, we will not review this issue. Even assuming the district court committed plain error, we would not exercise our discretion to correct the error.[7]

Accordingly, we AFFIRM the district court's judgment in all respects.

---

[6] We also reject Dale St. John's argument that the restitution losses assessed by the district court were not proximately caused by the defendant's conduct. *See* 18 U.S.C. § 3663(a)(2). It was an entirely foreseeable consequence of A Medical's decision to certify patients as eligible for homebound-related services that HHAs would submit Medicare reimbursement claims for services provided to those patients.

[7] If we were to review the issue for plain error and, assuming arguendo that this error satisfied the other three prongs of plain error review, we would conclude that the delay in raising this issue supports our decision not to exercise our discretion to notice the error under the "fourth prong" of plain error review. *United States v. Escalante-Reyes,* 689 F.3d 415, 425 (5th Cir. 2012) (en banc) (explaining that the fourth prong is not "automatic if the other three prongs are met").